UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA PHILLIP SMITH, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.: 1:21-cv-2035 |
| CITY OF KOKOMO, INDIANA; | ) | |
| CHIEF OF POLICE DOUGLAS STOUT, | ) | **JURY TRIAL DEMANDED** |
| in his official capacity; | ) | |
| LIEUTENANT CARY JACOBS, in his | ) | |
| official capacity; | ) | |
| DEREK COLE, in his individual and | ) | |
| official capacities; | ) | |
| ALEX TOTH, in his individual and | ) | |
| official capacities; and | ) | |
| JUSTIN MACKY, in his individual and | ) | |
| official capacities; | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff, Joshua Phillip Smith (hereinafter "Mr. Smith" or "Plaintiff"), by and through counsel of record, Bradley Keffer and Austin Andreas of Keffer Hirschauer LLP, for his Complaint for damages against Defendants City of Kokomo, Indiana (hereinafter "Defendant Kokomo"); Chief of Police Douglas Stout (hereinafter "Chief Stout"), in his official capacity; Lieutenant Cary Jacobs (hereinafter "Lt. Jacobs") in his official capacity; Officer Derek Cole, (hereinafter "Officer Cole") in his individual and official capacities; Officer Alex Toth, (hereinafter "Officer Toth") in his individual and official capacities; and Officer Justin Macky, (hereinafter "Officer Macky") in his individual and official capacities, states as follows:

### INTRODUCTION

1. The Plaintiff seeks money damages against Defendants for violation of rights as guaranteed under the United States Constitution and/or Indiana law.

1

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's causes of action arising under the Constitution of the United States and 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue lies in the United States District Court for the Southern District of Indiana because all or a substantial portion of these events or omissions giving rise to this Complaint occurred in or around Howard County, Indiana, which is located in the Southern District of Indiana. *See* 28 U.S.C. § 1391(b).

**PARTIES**

5. Joshua Phillip Smith is an adult individual who at all times relevant to this Complaint resided in Howard County, Indiana

6. The City of Kokomo, Indiana, is a political subdivision located in Howard County, Indiana, and includes the Kokomo Police Department.

7. Chief Stout is, or was at all times relevant to this Complaint, the duly appointed Chief of Police of the Kokomo Police Department.

8. Lt. Cary Jacobs was at all times relevant to this Complaint, a supervisory law enforcement officer with the Kokomo Police Department.

9. Derek Cole is, or was at all times relevant to this Complaint, a law enforcement officer with the Kokomo Police Department.

10. Alex Toth is, or was at all times relevant to this Complaint, a law enforcement officer with the Kokomo Police Department.

11. Justin Macky is, or was at all times relevant to this Complaint, a law enforcement officer with the Kokomo Police Department.

**FACTUAL BACKGROUND**

12. On or about July 16, 2019, Officer Cole initiated a traffic stop of Mr. Smith's vehicle for a seatbelt violation in the City of Kokomo, Indiana, and in the county of Howard, Indiana.

13. The interaction between Officer Cole and Mr. Smith was captured and recorded on Officer Cole's body-worn camera.

14. After activating the emergency lights on his patrol vehicle, Officer Cole exited his patrol vehicle, approached the driver's side door of Mr. Smith's vehicle and spoke with Mr. Mr. Smith regarding the seatbelt violation.

15. Mr. Smith complied with Officer Cole's instructions and answered the questions Officer Cole asked.

16. Specifically, Officer Cole approached the driver's side window of Mr. Smith's vehicle and asked, "hey what's going on with you, man?" or words to that effect.

17. Mr. Smith responded to Officer Cole's initial question by stating, "not much, how about you?" or words to that effect.

18. Officer Cole then responded, "good, do you have your I.D. on you," or words to that effect.

19. Mr. Smith responded, "I don't man," or words to that effect.

20. Officer Cole then indicated, "hey the reason I stopped you was that I noticed that on the intersection of Tate and Apperson that you didn't have your seatbelt on. You still don't have it on," or words to that effect.

21. Mr. Smith responded, "yeah, I don't," or words to that effect.

22. Officer Cole then asked Mr. Smith, "where are you coming from," or words to that effect.

23. Mr. Smith responded, "I'm actually coming from work. Just stopping at a friend's house seeing what they had to eat, they didn't have nothing to eat so I went on home," or words to that effect.

24. Officer Cole then responded, "OK, where do you work at?" or words to that effect.

25. Mr. Smith responded, "up in Rochester, up at Lau," or words to that effect.

26. Officer Cole responded, "Lau, what's that?" or words to that effect.

27. Mr. Smith indicated, "Lau Industries, it's like we build, like, fan motors and stuff like that," or words to that effect.

28. Officer Cole then responded, "OK, go ahead and step on out for me," or words to that effect.

29. At this point in the interaction, Officer Cole did not have reasonable suspicion and/or probable cause to suspect that Mr. Smith had committed a crime.

30. At this point in the interaction, Mr. Smith's answers and/or conduct offered Officer Cole no reason to fear for his safety.

31. Mr. Smith indicated that he "did not want to," or words to that effect.

32. Officer Cole responded by stating, "that is not an option."

33. Mr. Smith indicated that "I don't have to," or words to that effect.

34. Officer Cole responded, "Yeah you do, legally," or words to that effect.

35. Mr. Smith then asked Officer Cole why he was asking him to exit the vehicle, and Officer Cole responded that, "case law says you have to. Now you are going to go to jail," or words to that effect.

36. Mr. Smith responded by stating, "I have not committed any crime," or words to that effect.

37. Officer Cole then opened the driver's side door of Mr. Smith's vehicle and Mr. Smith complied with Officer Cole's instructions to exit the vehicle.

38. Officer Cole then immediately asked Mr. Smith, "do you have anything illegal on you?" or words to that effect.

39. Mr. Smith responded to Officer Cole's question that he did not and that he did not consent to any seizures, or words to that effect.

40. Officer Cole asked if Mr. Smith had any weapons on him, or words to that effect, and Mr. Smith responded that he did not, or words to that effect.

41. Officer Cole then asked Mr. Smith to place his hands on his head to perform a pat down search of Mr. Smith's person, and Mr. Smith complied.

42. Officer Cole performed the pat down search of Mr. Smith's person and asked Mr. Smith about a plastic baggie in his pocket.

43. As Mr. Smith reached for his pocket that Officer Cole just referenced, Officer Cole stated, "don't reach for it, don't reach for it," or words to that effect.

44. Mr. Smith again stated that he did not consent to a search or seizure.

45. Officer Cole physically restrained Mr. Smith and forced both of Mr. Smith's hands to his chest and stated, "You are going to put your hands right here on your chest and you're not going to move. Understood?"

46. Mr. Smith complied with Officer Cole's instructions and stated, "you aren't going to reach into my pocket," or words to that effect.

47. Officer Cole then began pointing his finger in Mr. Smith's face and stated, "Listen to me, I'm not going to reach into your pocket. But you are not going to move your hand from your chest," or words to that effect.

48. Mr. Smith responded by stating, "I got you," or words to that effect.

49. Officer Cole then asked Mr. Smith to turn around and face the car, to which Mr. Smith responded, "no," or words to that effect.

50. Officer Cole repeated his request that Mr. Smith face the car and stated, "I am going to make sure you don't have a knife."

51. Mr. Smith then lifted his shirt to demonstrate that he did not possess a weapon and stated, "I don't have nothing on me," or words to that effect.

52. Officer Cole then physically restrained Mr. Smith by firmly grasping Mr. Smith's right wrist with his left hand and Mr. Smith's left elbow with his right hand, and stated, "relax," or words to that effect.

53. Mr. Smith then attempted to return his hands to his chest, but Officer Cole continued to restrain Mr. Smith.

54. Officer Cole then stated, "dude don't make me. I am going to release this dog and you are going to get bit. Do you want to get bit?" or words to that effect.

55. Mr. Smith responded with sarcasm to Officer Cole's question and stated, "I don't have no problem. I love getting bit."

56. Officer Cole asked, "You love getting bit?" or words to that effect.

57. Mr. Smith then stated, "just let me pull my pants up," or words to that effect.

58. Officer Cole responded, "no," or words to that effect.

59. Mr. Smith then stated as he extended his right pinky, "I promise you it's not going to be a problem. I pinky promise," or words to that effect.

60. Mr. Smith then attempted to pull his pants up, and Officer Cole continued to restrain Mr. Smith.

61. Officer Cole then stated, "Stop. You're getting bit," or words to that effect.

62. Mr. Smith stated, "I was just pulling my pants up," or words to that effect.

63. At this point in the interaction, Mr. Smith had not threatened Officer Cole nor posed a threat to the safety of Officer Cole.

64. Officer Cole continued to restrain Mr. Smith by placing his left hand on Mr. Smith's chest and activated his K-9 "door popper."

65. A K-9 door popper is a device which remotely unlocks and opens a patrol car door to release and activate a K-9 unit.

66. Officer Cole's K-9 unit exited the vehicle and started running toward Mr. Smith.

67. Officer Cole gave the K-9 unit a command and the K-9 unit latched to Mr. Smith's right arm and began biting and ripping its head back and forth.

68. Mr. Smith began screaming in pain as the K-9 unit latched to his right arm.

69. Officer Cole then began yelling for Mr. Smith to get on the ground and delivered several open palm strikes to Mr. Smith's head.

70. Officer Cole then requested backup on his radio dispatch.

71. Mr. Smith then began repeatedly yelling, "I'm autistic," or words to that effect.

72. Officer Cole commanded Mr. Smith to get on his side as Mr. Smith continued to yell that he is autistic.

73. Mr. Smith was diagnosed with pervasive developmental delay at an early age and is on the autism spectrum.

74. The diagnostic category of pervasive developmental disorders is characterized by delays in the development of socialization and communication skills.

75. Mr. Smith then began repeatedly yelling, "I don't understand," or words to that effect.

76. Officer Cole commanded Mr. Smith to get on his stomach, and Mr. Smith began repeatedly yelling, "help," or words to that effect.

77. Officer Cole's K-9 unit remained engaged with Mr. Smith's right arm for approximately one (1) full minute and blood began to pool around Mr. Smith.

78. Officer Cole commanded the K-9 unit back to his patrol car and the K-9 unit complied.

79. Officer Cole then drew his firearm and Mr. Smith began walking away from his vehicle.

80. Officer Cole then commanded Mr. Smith to get on his stomach, and when Mr. Smith turned toward Officer Cole, Officer Cole sprayed Mr. Smith in the face with a chemical agent.

81. Mr. Smith then fell to his knees holding his bloody and mangled right arm.

82. Officer Toth and Officer Macky arrived on scene while Mr. Smith sat on his knees and continued to yell, "please stop," or words to that effect.

83. Officer Toth commanded Mr. Smith to get on his stomach, and Mr. Smith got on his hands and knees and stated, "I don't understand."

84. Officer Toth then deployed his taser into Mr. Smith's damaged right arm for a full cycle.

85. A full taser cycle lasts six seconds unless it is stopped or extended by the officer.

86. Officer Macky then placed both hands on Mr. Smith's back and forced him face down on the pavement.

87. Officer Macky placed handcuffs on Mr. Smith with his hands behind his back.

88. Officer Macky then placed a tourniquet on Mr. Smith's right arm as it continued to bleed and pool around Mr. Smith as he lay face down.

89. As Officer Macky placed the tourniquet on Mr. Smith, Officer Cole asked Mr. Smith, "why didn't you do what you were told?" or words to that effect.

90. Mr. Smith responded, "I did do what I was told," or words to that effect.

91. Officer Cole then stated, "this could have all been avoided if he would have listened," or words to that effect.

92. An unidentified officer asked Officer Cole what happened, and Officer Cole responded, "he got bit by Barry," or words to that effect.

93. Mr. Smith then stated, "your dog attacked me for no reason," or words to that effect.

94. Officer Cole then responded, "well you didn't listen," or words to that effect.

95. Due to the severity of Mr. Smith's injuries as well as the immediate risk of death from loss of blood, Mr. Smith was transported by medevac air ambulance to the emergency department in Parkview Regional Medical Center in Fort Wayne, Indiana.

96. Mr. Smith sustained cuts and abrasions to his face, multiple punctate lacerations to his right arm, a 5-centimeter transverse laceration to his right arm, a 7-centimeter transverse laceration to his right arm, and a severed vein which required a tie off.

97. Officers Cole, Toth, and Mackey submitted documents and/or an Affidavit of Probable Cause for subsequent filing under cause number 34D04-1907-F6-002193.

98. On or about July 18, 2019, criminal charges were filed against Mr. Smith in Howard County Superior Court 4 under cause number 34D04-1907-F6-002193.

**COUNT I: Unlawful Seizure, False Imprisonment, and/or False Arrest**
**Fourth and Fourteenth Amendments**
**(Officer Cole)**

99. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

100. Officer Cole is considered a "person" within the meaning of 42 U.S.C. § 1983.

101. The Indiana Tort Claims Act shields, "a government entity or an employee acting within the scope of the employee's employment from liability for losses resulting from the

'enforcement of . . . a law . . . unless the act of law enforcement constitutes false arrest or false imprisonment.'" I.C. § 34-13-3-3(7).

102. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons against unreasonable searches and seizures.

103. Further, under the Fourth Amendment, a seizure requires an intentional acquisition of physical control, even if a formal arrest has not been executed.

104. In Indiana, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent. *See Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002).

105. A defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause to do so. *See Id.*

106. Officer Cole unlawfully seized, falsely imprisoned, and/or falsely arrested Mr. Smith by ordering him from his vehicle to perform a pat down search without reasonable suspicion.

107. At the time Officer Cole commanded Mr. Smith to exit his vehicle following his suspicion of a traffic infraction for failure to wear a seatbelt, he did not have independent reasonable suspicion nor probable cause that Mr. Smith was engaging in other criminal activity.

108. Indiana Code § 9-19-10-3.1(a) states, ". . . a vehicle may be stopped to determine compliance with this chapter. **However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter**." (Emphasis added).

109. Under Indiana law, a traffic stop based upon the failure of either the driver or passenger to wear a seatbelt, standing alone, does not provide reasonable suspicion for the police to

unilaterally expand their investigation and search for evidence of other possible crimes. *See State v. Morris*, 732 N.E.2d 224, 227 (Ind. Ct. App. 2000).

110. Under Indiana law, "an officer may only expand his or her investigation subsequent to the stop if other circumstances arise after the stop, which independently provide the officer with reasonable suspicion of other crimes." *Id.*

111. Officer Cole did not observe circumstances after the stop which provided Officer Cole with reasonable suspicion nor probable cause that Mr. Smith had committed crimes other than a violation of Indiana Code § 9-19-10-3.1(a).

112. The actions or omission of Officer Cole constituted a violation and a deprivation of Mr. Smith's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

113. The actions and/or omissions of Officer Cole were objectively unreasonable.

114. As a result, Officer Cole violated Mr. Smith's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

115. Those violations caused Mr. Smith to suffer compensable injury.

116. Officer Cole's actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Mr. Smith's rights.

117. Officer Cole's actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT II: Failure to Protect - Unlawful Seizure, False Imprisonment, and/or False Arrest**
**Fourth and Fourteenth Amendments**
**(Officers Cole, Toth, and/or Macky)**

118. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

119. Officers Cole, Toth, and/or Macky are "persons" within the meaning of 42 U.S.C. § 1983.

120. The actions and/or omissions of Officers Cole, Toth, and/or Macky were taken under color of state law based on their authority and official position as law enforcement officers with the Kokomo Police Department.

121. The United States Constitution prohibits law enforcement officers from failing to intervene in another officer's actions, if that officer had reason to know that any constitutional violation had been committed and that officer had a realistic opportunity to intervene to prevent the violation from occurring or continuing.

122. Officers Cole, Toth, and/or Macky each had reason to believe that Mr. Smith's detention and/or arrest was unlawful.

123. Officers Cole, Toth, and/or Macky each had a realistic opportunity to intervene in the unlawful detention and/or arrest of Mr. Smith.

124. The actions and/or omissions of Officers Cole, Toth, and/or Macky were objectively unreasonable.

125. As a result, the officers violated Mr. Smith's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

126. Those violations caused Mr. Smith to suffer compensable injury.

127. The officers' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Mr. Smith's rights.

128. The officers' actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT III: Excessive Force – Fourth and Fourteenth Amendments**
**(Officers Cole, Toth, and/or Macky)**

129. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

130. Officers Cole, Toth, and/or Macky are "persons" within the meaning of 42 U.S.C. § 1983.

131. The actions and/or omissions of Officers Cole, Toth, and/or Macky were taken under color of state law based on their authority and official position as law enforcement officers with the Kokomo Police Department.

132. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

133. The Fourth Amendment prohibits law enforcement officers from employing greater force than is reasonably necessary to make an arrest.

134. Law enforcement officers are required to act in an objectively reasonable manner in light of the totality of the facts and circumstances confronting them.

135. The facts and circumstances confronting the law enforcement officer are judged from the perspective of a reasonable officer on the scene.

136. During their interactions with Mr. Smith, Officers Cole, Toth, and/or Macky used greater force than was reasonably necessary to effectuate Mr. Smith's arrest.

137. The actions and/or omissions of Officers Cole, Toth, and/or Macky were objectively unreasonable based on the totality of circumstances the officers encountered, including, but not limited to, Mr. Smith's disclosure of his autism diagnosis to the arresting officers.

138. As a result, the officers violated Mr. Smith's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

139. Those violations caused Mr. Smith to suffer compensable injury.

140. The officers' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

141. The officers' actions and/or omissions are actionable under 42 U.S.C. § 1983.

## COUNT IV: Failure to Protect - Excessive Force
## Fourth and Fourteenth Amendments
### (Officers Cole, Toth, and/or Macky)

142. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

143. Officers Cole, Toth, and/or Macky are "persons" within the meaning of 42 U.S.C. § 1983.

144. The actions and/or omissions of Officers Cole, Toth, and/or Macky were taken under color of state law based on their authority and official position as law enforcement officers with the Muncie Police Department.

145. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

146. The Fourth Amendment prohibits law enforcement officers from failing to intervene in another officer's actions, if that officer had reason to know that excessive force was being used or that any constitutional violation had been committed and that officer had a realistic opportunity to intervene to prevent the violation from occurring or continuing.

147. Officers Cole, Toth, and/or Macky each had reason to believe that excessive force was being used.

148. Officers Cole, Toth, and/or Macky each had a realistic opportunity to intervene in that excessive force but failed to do so.

149. The actions and/or omissions of Officers Cole, Toth, and/or Macky were objectively unreasonable, including, but not limited to, Mr. Smith's disclosure of his autism diagnosis to the arresting officers.

150. As a result, the officers violated Mr. Smith's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

151. Those violations caused the Plaintiff to suffer compensable injury.

152. The officers' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

153. The officers' actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT V: *Monell* Claims**
**(City of Kokomo, Indiana, Chief Stout, and/or Lt. Jacobs)**

154. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

155. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

156. "A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

157. As a matter of policy, custom, or practice, the Defendants failed to properly supervise and train their officers regarding objectively reasonable treatment and uses of force against arrestees.

158. As a matter of policy, custom, or practice, the Defendants failed to properly supervise and train their officers regarding objectively reasonable treatment and uses of force against autistic individuals.

159. The failure to train, supervise, and/or discipline officers in proper use of K-9 units against an arrestee amounted to deliberate indifference to Plaintiff.

160. The Defendants have failed to properly or sufficiently discipline officers that use excessive force, which has led to the acceptance of that conduct and the actions of officers in this case.

161. A culture of indifference, tolerance, and/or encouragement of officers' uses of excessive force has permeated the department.

162. The Defendants have maintained a custom or practice with the force of law that resulted in some or all of the Plaintiff's injuries.

163. The Plaintiff suffered compensable injury as a direct and proximate cause of the unlawful customs, policies, and/or practices.

### COUNT VI: Battery
### (Officers Cole, Toth, Macky, City of Kokomo, Indiana)

164. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

165. A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is a Class A misdemeanor if it results in bodily injury to any other person and a Level 6 Felony, if it results in moderate bodily injury. *See* Ind. Code § 35-42-2-1.

166. Officers Cole, Toth, and/or Macky battered Mr. Smith.

167. The actions of Officers Cole, Toth, and/or Macky were malicious, willful, and/or wanton.

168. Officers Cole, Toth, and/or Macky committed tortious acts against the Plaintiff while working within the scope of their employment with the Kokomo Police Department.

169. Mr. Smith suffered compensable harm and damages as a result of the officers' illegal and unlawful actions.

**COUNT VII: Confinement**
**(Officers Cole, Toth, Macky, and/or City of Kokomo, Indiana)**

170. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

171. A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement, a Level 6 Felony. *See* Indiana Code § 35-42-3-3(a). However, the offense is a Level 4 Felony if it results in moderate bodily injury to any other person, Indiana Code § 35-42-3-3(b)(2), and a Level 3 Felony if it results in serious bodily injury. *See* Indiana Code § 35-42-3-3(b)(3)(A).

172. Officers Cole, Toth, and/or Macky criminally confined Mr. Smith when they physically detained him despite the conclusion of the traffic infraction he was being held on.

173. Officers Cole, Toth, and/or Macky's criminal confinement of Mr. Smith while he was on the ground resulted in serious bodily injury to Mr. Smith.

174. The actions of Officers Cole, Toth, and/or Macky were malicious, willful, and/or wanton.

175. Officers Cole, Toth, and/or Macky committed tortious acts against the Plaintiff while working within the scope of their employment with the Kokomo Police Department.

176. Mr. Smith suffered compensable harm and damages as a result of the officers' illegal and unlawful actions.

## COUNT VIII: Negligence
### (Officers Cole, Toth, Macky, and/or City of Kokomo, Indiana)

177. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

178. An action for negligence has three elements: "(1) a duty owed to plaintiff by the defendant; (2) a breach of the duty; (3) an injury proximately caused by the breach of the duty." *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014).

179. Governmental entities in Indiana owe a common law duty to use ordinary and reasonable care under the circumstances. *Campbell v. State*, 284 N.E.2d 733, 737 (Ind. 1971).

180. The facts and circumstances confronting the law enforcement officer are judged from the perspective of a reasonable officer on the scene.

181. During their interactions with Mr. Smith, Officers Cole, Toth, and/or Macky negligently released and allowed a K-9 unit to latch to Mr. Smith's arm.

182. The actions and/or omissions of Officers Cole, Toth, Macky, and/or the City of Kokomo, Indiana, specifically, releasing a K-9 unit which latched to Mr. Smith's arm in order to effectuate a false arrest and constituted excessive force, were objectively unreasonable.

183. The actions and/or omissions of Officers Cole, Toth, Macky, and/or the City of Kokomo, Indiana, specifically, releasing a K-9 unit which latched to Mr. Smith's arm in order to effectuate a false arrest and constituted excessive force, constituted a breach of the common law duty to use ordinary and reasonable care under the circumstances.

184. Mr. Smith suffered compensable harm and damages as a result of the Defendants' negligent actions and/or omissions.

**REQUESTED RELIEF**

185. Plaintiff respectfully requests:

    a.   Damages including compensatory and punitive damages;

    b.   Reasonable attorney's fees pursuant to 42 U.S.C. 1988;

    c.   All damages and interested allowed under Indiana Code § 34-24-3 *et seq.*;

    d.   All appropriate interest on all amounts that are recovered;

    e.   All appropriate injunctive relief;

    f.   The costs and expenses incurred in the prosecution of this action; and

    g.   All other just and proper relief.

**DEMAND FOR A JURY TRIAL**

186. Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States and Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully submitted,

*/s/ Austin R. Andreas*
Austin Andreas, #35155-53
Bradley Keffer, #27195-49
Keffer Hirschauer LLP

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date a copy of the foregoing **Complaint** was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Austin R. Andreas*
Austin R. Andreas, #35155-53
Bradley A. Keffer, #27195-49

Keffer Hirschauer LLP
230 East Ohio Street, Suite 400
Indianapolis, Indiana 46204
Keffer@IndyJustice.com
T: (317) 857-0160
F: (855) 641-5311